114 F.3d 1192
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Fortino MATA, Eduardo Rivera, and Rafael Gutierrez,
Defendants-Appellants.
 Nos. 96-2577, 96-2955 and 96-3441.
 United States Court of Appeals, Seventh Circuit.
 Submitted April 4, 1997.[1]
Decided April 24, 1997.
 
 Before CUMMINGS, DIANE P. WOOD, and EVANS, Circuit Judges.
 
 ORDER
 
 1
 Eduardo Rivera, Fortino Mata, Rafael Gutierrez, and 6 others were named defendants in a 12-count indictment involving the distribution of massive amounts of cocaine. Although 9 defendants were named in the indictment, the evidence suggests that up to 15 people were involved in moving the cocaine from Mexico to Texas and then on to Chicago and Milwaukee for sale. Jesus Ontiveros was the ultimate supplier of the cocaine for the organization. Rivera was in charge of the distribution end of the organization in Milwaukee and Chicago. Gutierrez and Mata worked under Rivera as deliverymen and money collectors in the Milwaukee area.
 
 
 2
 Rivera and Mata pled guilty to the conspiracy to distribute cocaine charge in count 1 (more than 100 kilos was alleged) and were sentenced to terms of 324 months and 135 months, respectively. Gutierrez also signed a plea agreement but got cold feet, and when he questioned whether he was in fact guilty, the district judge set aside his offered guilty plea and put the case on the trial calendar. A jury trial was subsequently conducted and Gutierrez was found guilty on the conspiracy count and three substantive distribution counts, numbers 3, 5, and 10.
 
 
 3
 The attorneys for Mata and Gutierrez have filed briefs pursuant to Anders v. California, 386 U.S. 738 (1967), arguing that neither defendant can make a meritorious argument on appeal. Neither Gutierrez nor Mata have responded to the Anders briefs, although both received copies of them. We have reviewed the briefs and find them to be persuasive.[2] Accordingly, the appeals of Mata and Gutierrez are dismissed, and their respective attorneys, Victor Plantinga and Mr. Edmonds, may withdraw from the case as they have admirably performed their responsibilities.
 
 
 4
 We turn, then, to Rivera's appeal, which raises two sentencing issues. Unfortunately for Mr. Rivera, his issues, like the cases of Mata and Gutierrez, have no merit.
 
 
 5
 At sentencing, Rivera's base offense level was increased by 4 levels based on a finding by the district court judge that Rivera was a "leader or organizer" of criminal activity involving "five or more participants" pursuant to § 3B1.1(a) of the federal sentencing guidelines.
 
 
 6
 Section 3B1.1 of the guidelines kicks in when a defendant's criminal conduct warrants classifying him as something other than a low-level operative. Enhancements of 2, 3, and 4 points are allowed on an increasing scale of accountability. Rivera was tagged under subsection (a), which provides for a 4-level increase "if the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." Rivera argues that this classification was wrong. Instead of applying subsection (a), Rivera says he should have been jacked up 3 levels under subsection (b) because he was merely a "manager or supervisor" (not an "organizer or leader"). Rivera concedes that the conspiracy here involved five or more persons, but he says that the leader was Ontiveros and that he was a subordinate. So a 3-level enhancement, he says, is a better fit.
 
 
 7
 Rivera's contention ignores the fact that there can be more than one person who qualifies as a leader or organizer of a criminal conspiracy. See § 3B1.1(a), cmt. (n. 4). In this case the district judge found that Rivera was the man in charge in Milwaukee, and our review of the record conclusively shows that this finding was not clearly erroneous. All the coconspirators in Milwaukee and Chicago looked to Rivera for directions, and his placement under subsection (a) of the guidelines by the district judge was not clearly erroneous.
 
 
 8
 Lastly, Rivera argues that the district judge clearly erred when he ordered a 2-level increase under § 3C1.2 of the guidelines based on a finding that Rivera "recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer." The enhancement sprang from an incident on November 14, 1995, when agents were in Chicago looking to arrest Rivera. While on the lookout for Rivera, they stopped a car he had been driving in the past, and while talking to the driver of that car--with the blue and red flashing lights on their unmarked squad car in full operation--Rivera drove by, attempting, according to the agents, to obscure his identity by putting his hand to his face. The agents got in their car and pursued Rivera with the red and blue lights flashing. Rivera accelerated to a speed of 70 miles an hour and ran five red lights during the chase. He eventually drove through a construction zone and over a set of railroad tracks, where his car, for a brief period, was completely airborne. The vehicle hit a patch of ice, struck a van and three parked vehicles, and became disabled. Rivera attempted to flee but was arrested after a short chase.
 
 
 9
 At the sentencing hearing, Rivera argued against the § 3C1.2 enhancement, saying he fled because he thought the police were actually rival drug dealers sent from Mexico to rub him out. He said he didn't know his pursuers were law enforcement officers. The district judge rejected Rivera's version of the chase and instead found that he knew he was being pursued by the gendarmes. This finding, on this record, is not even close to being clearly erroneous.
 
 
 10
 For these reasons, the judgment of the district court in Mr. Rivera's case is AFFIRMED. As previously noted, the appeals by Mata and Gutierrez are DISMISSED.
 
 
 
 [1]
 This case was set to be orally argued, as to Eduardo Rivera's appeal, on April 4, 1997. After the appeal was scheduled for argument, however, we granted a defense motion to consider the case on the briefs
 
 
 [2]
 Attorney Michael Edmonds, on behalf of Gutierrez, does point out that a possible challenge could lie to the conviction on count 5. An argument could conceivably be made, Mr. Edmonds says, that the cocaine in count 5 was part of the same cocaine involved in count 3. If it was the same, Edmonds points out that a double jeopardy argument might be sustainable. But Mr. Edmonds goes on to note that even an acquittal on count 5 would be of no help to Mr. Gutierrez. This is so because the number of convictions has no effect on his sentence. It is Gutierrez's "relevant conduct" that drives his sentence, and thus nothing could be gained by seeking to set aside the conviction on count 5. Mr. Edmonds is correct. Because ample evidence supports the jury's finding of guilty on at least counts 1, 3, and 10, and because concurrent sentences were ordered, the conviction on count 5 is not really important. So even if a successful challenge to count 5 could be made--and it is doubtful to us upon our review of the record that it could be--the situation presents a classic example of "no harm no foul." Rather than pursue the empty gesture of requiring further appellate proceedings on count 5, we choose to let the conviction on that count, which was approved by the trial judge as being supported by the evidence, stand